## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ALEXANDER PALMER,** | : | |
| | : | |
| Plaintiff, | : | **Case No.:** |
| | : | |
| vs. | : | |
| | : | |
| **LINCOLN TECHNICAL INSTITUTE, INC.,** | : | |
| | : | |
| Defendant. | : | **December 9, 2025** |

**Jury Trial Demanded**

## COMPLAINT

Plaintiff Alexander Palmer, by and through his attorneys, Sabatini and Associates, LLC, complaining of the defendant, respectfully asserts:

## PARTIES

1.     Plaintiff, Alexander Palmer, is a citizen residing in the State of Connecticut.

2.     Defendant Lincoln Technical Institute, Inc., was and is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business located at 14 Sylvan Way, Suite A, Parsippany, New Jersey, 07054.

3.     At all times material, Defendant is an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

4.     At all times material, plaintiff is an employee within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

5.     At all times material, Defendant is an employer within the meaning of the Connecticut Fair Employment Practices Act (CFEPA).

6.     At all times material, plaintiff is an employee within the meaning of the

1

Connecticut Fair Employment Practices Act (CFEPA).

## JURISDICTION AND VENUE

7.      The Court has jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 and

this action is brought pursuant to: Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e *et seq*.

8.      This Court has personal jurisdiction over the Parties and venue is proper under 28

U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the claim

occurred in the State of Connecticut.

9.      This Court has supplemental or pendent jurisdiction over the state law claims.

## FACTUAL ASSERTIONS

10.     Defendant is a Vocational Training Institute.

11.     Defendant offers training programs in Automotive, Skilled Trades, Health

Sciences and Information Technology.

12.     Defendant owns and operates a trade school located at 97 Newberry Road, East

Windsor, Connecticut 06088.

13.     Defendant hired plaintiff on or about April 21, 2024.

14.     Plaintiff's job position was Admissions Representative.

15.     Plaintiff was qualified for the job.

16.     Plaintiff is African-American.

17.     Plaintiff's color is black.

18.     Defendant knew that plaintiff was African-American.

19.    Defendant knew that plaintiff's color was black.

20.    Defendant employed Michael Phelps.

21.    Phelps was a supervisor.

22.    Phelps job title was Admission Director.

23.    Phelps was plaintiff's original supervisor.

24.    On or about July 3, 2024, plaintiff was in Phelp's office when Phelps said the following – "You double booked an appointment.  You have a schedule. Get a copy of the new schedule, staple it to your f-cking forehead, so you are not looking like a monkey f-cking a football."

25.    Prior to Phelps directing his racist remark to the plaintiff on July 3, Phelps had been talking down to the plaintiff as if the plaintiff was a 5th grader.

26.    Phelps was supposed to personally train plaintiff and failed to do so.

27.    Phelps called certain students "knuckleheads" and "assholes".  He directed the disparaging name calling to three (3) African-American students.

28.    Phelps called staff members "pussies".

29.    Defendant employs Ryan Mullins as an Admissions Representative.

30.    On or about July 3, 2024, plaintiff told Mullins about Phelp's racist remark.

31.    Mullins told plaintiff that Phelps had a documented history of misconduct.

32.    On July 5, 2024, plaintiff reported Phelps' racist remark to the defendant.

33.    Complainant sent the following email to Kevin Clark, defendant's Campus President and Tammy Savoie, defendant's Business Administrator and Human Resources employee.

**From:** Alexander Palmer <APalmer@lincolntech.edu>
**Sent:** Friday, July 5, 2024 1:15 PM
**To:** Kevin Clark <KevinClark@lincolntech.edu>
**Cc:** Tammy Savoie <TSavoie@lincolntech.edu>
**Subject:** 7/3-Admissions Concern (A.Palmer)

Good Morning,

I'm kind of nervous in sending an email like this since I'm fairly a new employee and I don't want to be retaliated against but just being a Black male, I didn't think it was appropriate for my director Mike Phelps to tell me in his office on Wednesday around 11:45am, that I look like a "monkey trying to F**k a football". This was said to me due to two appointments(Karisma James & Haris Sabovic) overlapping one another. And Mike having to help interview one of the potentials while I was finishing up an enrollment for Augusts start. Plus, to top off the already "uncomfortable" remark he asked me if I had an updated schedule and when I answered, he told me that going forward "to make a copy and staple it to my f%@king head".

Now humbly I speak as a leader who also has had management experience in corp. America(maybe not as long as mike but yet & still), if the overlapping of the appointment really needed to be addressed and was that big of an issue, possibly if feedback was done in a "more professional and less racist" manner, the average employee would have received the message that this may be a flaw of disorganization that can easily be improved on for the future. And instead of the feeling of condemnation, the employee may have been encouraged to build on the constructive criticism for the goal of becoming more effective and organized to better themselves and the team.

Instead, I was communicated and ostracized as less than an admissions rep, let alone a human being and as much as this pains me to report Michael Phelps I have no choice but to stand up for myself. I am the type of person that I look at what a person can Be, not what they may seem to be in the moment right now. And coming in to work today (Friday 7/5), I have not received an apology nor any regard for the incident Wednesday(which insinuates no form of remorse or change). Lincoln tech just celebrated two special holidays that commemorates the freedom, integrity and respect of values/traditions that every American is owed to enjoy and be proud of but if such negligent, targeted behavior and racism should be "swept under the rug"(which is common in Corp America) or looked as a micro issue continues in the workplace I fear that it may have the potential to send the message down the ladder if it hasn't already, that Any career growth/opportunity for someone who looks like me is impossible and presumed to be "the standard" of our workplace environment and overseers in management here at Lincoln Tech.

34.    On July 9, 2024, plaintiff met with Clark and Savoie.

4

35.    During the meeting, Clark asked the plaintiff what he wanted to be done.

36.    Plaintiff replied by stating that he wanted Phelps removed from his position or terminated.

37.    Clark told Plaintiff that Phelps was not a racist and to not blow out of proportion what Phelps' racist remarks.

38.    Phelps continued to be plaintiff's supervisor following the July 9 meeting.

39.    On July 12, 2024, Phelps said to plaintiff: "I will cover you so you are not looking like a monkey f-cking a football."

40.    Plaintiff reported Phelp's repeated racist remark to the defendant.

41.    Clark and Savoie received plaintiff's second complaint of Phelp's repeating the racist remark.

42.    Defendant terminated Phelp's employment after plaintiff's second complaint.

43.    Defendant employs Brian Hebron.

44.    Hebron is a supervisor.

45.    Hebron became plaintiff's supervisor following the termination of Phelps.

46.    Hebron was notified of the Phelp's racist remarks.

47.    Monkey has long been used as a racial slur against African-Americans and black people.

48.    Monkey is a racial slur because it refers to a group of people as: "subhuman", "inferior" to other groups of people, "animals", "savages", and not "fully evolved".

49.    There is dehumanizing intent behind using "monkey" towards black people.

50.    On August 21, 2024, defendant terminated plaintiff's employment.

51.    Hebron and Clark were in the termination meeting with the plaintiff.

5

52.     During the meeting, Clark commented: "[i]t pains me to say that I have to let you go. You are just not cutting it.  It is really performance based. Just not hitting the numbers."

53.     Hebron did not talk during the meeting.

54.     Clark's "just not hitting the numbers" remark was false.

55.     Plaintiff was hitting the numbers.

56.     The numbers referred to enrollments.

57.     Plaintiff was hitting his enrollment numbers.

58.     Defendant has an employee handbook.

59.     In the employee handbook, defendant states that it issues performance improvement plans to address performance-related issues.

60.     Defendant did not issue plaintiff a performance improvement plan.

61.     Defendant has a customary practice of issuing documented warnings or corrective actions to put employees on notice of performance deficiencies requiring immediate attention.

62.     Defendant did not issue plaintiff any documented warning or corrective action putting him on notice of some alleged performance deficiency requiring attention.

63.     Defendant did not put the plaintiff on a performance improvement plan because there was nothing legitimately wrong with his performance that warranted a performance improvement plan.

64.     Defendant did not issue the plaintiff a documented warning or corrective action because there was nothing legitimately wrong with his performance to warrant formal disciplinary action.

65.     Performance improvement plans are designed to put the employee on notice of the claimed performance deficiencies that need immediate attention.

6

66.     Performance improvement plans provide reasonable opportunity in the form of time (30 days, 60 days, 90 days) for the employee to address the claimed performance deficiencies by curing the deficiencies or by demonstrating improvement.

67.     Documented warnings or corrective actions provide the employee with notice of the claimed performance deficiencies and an opportunity to fix them before further escalating discipline is issued.

68.     Defendant replaced plaintiff with an individual outside of his protected classes (not black; not African-American).

69.     Following plaintiff's termination, defendant employed no African-American Admissions Representatives at its East Windsor campus.

70.     Any and all reasons to be proffered by the defendant to explain its decision to terminate the plaintiff would be a pretext to cover up unlawful discrimination and/or retaliation.

71.     Phelp's racist remarks created a hostile work environment.

72.     The harassment was severe or pervasive.

73.     The harassment was unwelcomed.

74.     Phelp's workplace behavior and remarks were motivated at least on account of race.

75.     The harassment altered plaintiff's employment conditions and created an abusive environment.

76.     Plaintiff filed charges against defendant with the Connecticut Commission on Human Rights and Opportunities (CHRO) on or about the following date: October 28, 2024.

77.     Plaintiff filed charges against defendant with the Equal Employment Opportunity Commission (EEOC) on or about the following date: October 28, 2024.

78.    Plaintiff received a Right to Sue letter from the EEOC on November 24, 2025. (copy attached as Exhibit 1).

79.    Plaintiff received a Release of Jurisdiction letter from the CHRO on September 16, 2025. (copy attached as Exhibit 2).

### COUNT ONE
**(Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 cited as 42 U.S.C. §2000e(k))**

1.    Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

80.    Defendant, by and through its agents and/or employees, violated Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 in one or more of the following ways.

a.    In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's race;

b.    In that defendant treated the plaintiff adversely different from similarly situated employees on the basis of race;

c.    In that defendant discriminated against the plaintiff on the basis of race in such a way that it adversely affected his status as an employee;

d.    In that defendant terminated the plaintiff on account of his race;

e.    In that defendant intentionally discriminated against the plaintiff on the basis of race.

81.    As a result of defendant's violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, plaintiff suffered harms and losses.

82.    As a result of defendant's unequal treatment and discrimination, plaintiff has been

deprived of his employment and equal employment opportunities because of his race.

83.     As a result of defendant's discrimination, plaintiff has been deprived of income, wages, and benefits.

84.     As a further result of defendant's discrimination, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of his personal and professional reputations, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

85.     Plaintiff has suffered and will continue to suffer harms and losses as a result of defendant's wrongful and discriminatory acts.

86.     Defendant's discrimination has been willful.

### COUNT TWO
**(Color Discrimination in Violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 cited as 42 U.S.C. §2000e(k))**

1.     Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

87.     Defendant, by and through its agents and/or employees, violated Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 in one or more of the following ways.

a.     In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's color;

b.     In that defendant treated the plaintiff adversely different from similarly situated employees on the basis of color;

9

c.    In that defendant discriminated against the plaintiff on the basis of color in such a way that it adversely affected his status as an employee;

d.    In that defendant terminated the plaintiff on account of his color;

e.    In that defendant intentionally discriminated against the plaintiff on the basis of color.

88.    As a result of defendant's violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, plaintiff suffered harms and losses.

89.    As a result of defendant's unequal treatment and discrimination, plaintiff has been deprived of his employment and equal employment opportunities because of his race.

90.    As a result of defendant's discrimination, plaintiff has been deprived of income, wages, and benefits.

91.    As a further result of defendant's discrimination, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of his personal and professional reputations, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

92.    Plaintiff has suffered and will continue to suffer harms and losses as a result of defendant's wrongful and discriminatory acts.

93.    Defendant's discrimination has been willful.

## COUNT THREE
**(Retaliation in Violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 cited as 42 U.S.C. §2000e(k))**

1.    Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

94.     Defendant, by and through its agents and/or employees, violated Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991, retaliated against the plaintiff for engaging in legally protected activity.

95.     Plaintiff complained, reported and opposed unlawful employment practices including race discrimination, color discrimination, and harassment on account of race and color.

96.     Plaintiff had a good-faith, reasonable belief that what he was reporting to the defendant constituted unlawful employment practices

97.     Plaintiff has suffered harms and losses because of the retaliation including lost employment, lost wages, lost income, and emotional distress.

98.     Plaintiff has suffered and will continue to suffer harms and losses as a result of defendant's retaliatory acts.

## COUNT FOUR
**(Race Harassment in Violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 cited as 42 U.S.C. §2000e(k))**

1.      Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

99.     Plaintiff was subjected to harassment and abuse in defendant's workplace on account of his race.

100.    The harassment was severe or pervasive.

101.    The harassment and abuse was motivated, at least in part, on the basis of plaintiff's race.

102.    Plaintiff subjectively, reasonably and objectively perceived his work environment to be hostile.

103.    The racial harassment was sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment and to create an intimidating, hostile, abusive and/or offensive working environment.

104.    The acts and/or omissions of the defendant, by and through its employees and/or agents, as described in this Complaint constitute racial harassment within the meaning of Title VII of the Civil Rights Act of 1964.

105.    As a result of the hostile work environment, plaintiff suffered economic and non-economic harms and losses including but not limited to: loss of employment and severe emotional distress.

## COUNT FIVE
### (Color Harassment in Violation of Title VII of the Civil Rights Act of 1964 as amended by the Civil Rights Act of 1991 cited as 42 U.S.C. §2000e(k))

1.    Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

106.    Plaintiff was subjected to harassment and abuse in defendant's workplace on account of his color.

107.    The harassment was severe or pervasive.

108.    The harassment and abuse was motivated, at least in part, on the basis of plaintiff's color.

109.    Plaintiff subjectively, reasonably and objectively perceived his work environment to be hostile.

110.    The racial harassment was sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment and to create an intimidating, hostile, abusive and/or offensive working environment.

111.    The acts and/or omissions of the defendant, by and through its employees and/or agents, as described in this Complaint constitute racial harassment within the meaning of Title VII of the Civil Rights Act of 1964.

112.    As a result of the hostile work environment, plaintiff suffered economic and non-economic harms and losses including but not limited to: loss of employment and severe emotional distress.

### COUNT SIX
**(Race Discrimination in Violation of CFEPA)**

1.    Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

113.    Defendant, by and through its agents and/or employees, violated the Connecticut Fair Employment Practices Act (CFEPA) in one or more of the following ways.

a.    In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's race;

b.    In that defendant treated the plaintiff adversely different from similarly situated employees on the basis of race;

c.    In that defendant discriminated against the plaintiff on the basis of race in such a way that it adversely affected his status as an employee;

d.    In that defendant has denied work to the plaintiff on account of his race;

e.    In that defendant intentionally discriminated against the plaintiff on the basis of race.

114.    As a result of defendant's violation of CFEPA, plaintiff suffered harms and losses.

115.    As a result of defendant's unequal treatment and discrimination, plaintiff has been

13

deprived of his employment and equal employment opportunities because of his race.

116.    As a result of defendant's discrimination, plaintiff has been deprived of income, wages, and benefits.

117.    As a further result of defendant's discrimination, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of his personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

118.    Plaintiff has suffered and will continue to suffer harms and losses as a result of defendant's wrongful and discriminatory acts.

**COUNT SEVEN**
**(Color Discrimination in Violation of CFEPA)**

1.    Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

119.    Defendant, by and through its agents and/or employees, violated the Connecticut Fair Employment Practices Act (CFEPA) in one or more of the following ways.

a.    In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's color;

b.    In that defendant treated the plaintiff adversely different from similarly situated employees on the basis of color;

c.    In that defendant discriminated against the plaintiff on the basis of color in such a way that it adversely affected his status as an employee;

d.    In that defendant has denied work to the plaintiff on account of his color;

14

e.      In that defendant intentionally discriminated against the plaintiff on the basis of color.

120.    As a result of defendant's violation of CFEPA, plaintiff suffered harms and losses.

121.    As a result of defendant's unequal treatment and discrimination, plaintiff has been deprived of his employment and equal employment opportunities because of his color.

122.    As a result of defendant's discrimination, plaintiff has been deprived of income, wages, and benefits.

123.    As a further result of defendant's discrimination, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of his personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

124.    Plaintiff has suffered and will continue to suffer harms and losses as a result of defendant's wrongful and discriminatory acts.

**COUNT EIGHT**
**(Retaliation in Violation of CFEPA)**

1.      Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

125.    Defendant, by and through its agents and/or employees, violated C.G.S. §46a-60(b)(4) by retaliating against the plaintiff for engaging in legally protected activity.

126.    Plaintiff complained, reported and opposed unlawful employment practices.

127.    Because of plaintiff's protected activity, the defendant terminated plaintiff's employment.

128.     Plaintiff has suffered harms and losses because of the retaliation including lost wages, lost income, and emotional distress.

129.     Plaintiff has suffered and will continue to suffer harms and losses as a result of defendant's retaliatory acts.

## COUNT NINE
### (Race Harassment in Violation of CFEPA)

1.     Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

130.     Plaintiff was subjected to harassment and abuse in defendant's workplace on account of his race.

131.     The harassment was severe or pervasive.

132.     The harassment and abuse was motivated, at least in part, on the basis of plaintiff's race.

133.     Plaintiff subjectively, reasonably and objectively perceived his work environment to be hostile.

134.     The racial harassment was sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment and to create an intimidating, hostile, abusive and/or offensive working environment.

135.     The acts and/or omissions of the defendant, by and through its employees and/or agents, as described in this Complaint constitute racial harassment within the meaning of CFEPA §46a-60(b)(1).

136.     As a result of the hostile work environment, plaintiff suffered economic and non-economic harms and losses including severe emotional distress.

## COUNT TEN
### (Race Harassment in Violation of CFEPA)

1.      Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

137.    Plaintiff was subjected to harassment and abuse in defendant's workplace on account of his race.

138.    The harassment was severe or pervasive.

139.    The harassment and abuse was motivated, at least in part, on the basis of plaintiff's race.

140.    Plaintiff subjectively, reasonably and objectively perceived his work environment to be hostile.

141.    The racial harassment was sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment and to create an intimidating, hostile, abusive and/or offensive working environment.

142.    The acts and/or omissions of the defendant, by and through its employees and/or agents, as described in this Complaint constitute racial harassment within the meaning of CFEPA §46a-60(b)(1).

143.    As a result of the hostile work environment, plaintiff suffered economic and non-economic harms and losses including loss of employment and severe emotional distress.

## COUNT ELEVEN
### (Color Harassment in Violation of CFEPA)

1.      Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

144.    Plaintiff was subjected to harassment and abuse in defendant's workplace on account of his color.

145.    The harassment was severe or pervasive.

146.    The harassment and abuse was motivated, at least in part, on the basis of plaintiff's color.

147.    Plaintiff subjectively, reasonably and objectively perceived his work environment to be hostile.

148.    The racial harassment was sufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment and to create an intimidating, hostile, abusive and/or offensive working environment.

149.    The acts and/or omissions of the defendant, by and through its employees and/or agents, as described in this Complaint constitute color harassment within the meaning of CFEPA §46a-60(b)(1).

150.    As a result of the hostile work environment, plaintiff suffered economic and non-economic harms and losses including loss of employment and severe emotional distress.

## DEMAND FOR RELIEF

WHEREFORE, plaintiff prays for appropriate damages including: compensatory damages; damages for back pay, front pay, bonuses, personal days, lost pension/retirement benefits, emotional distress; Title VII punitive damages; CFEPA punitive damages; reasonable attorneys' fees; costs; interest; injunctive relief in the form of job reinstatement; prejudgment interest; post judgment interest; for injunctive relief requiring the removal of any and all adverse information contained in plaintiff's personnel file; for a trial by jury; and for all other just and proper relief.

DATE: December 9, 2025

James V. Sabatini, Esq.
Fed. No.: CT 19899
SABATINI AND ASSOCIATES, LLC
1 Market Square
Newington, CT 06111
Tel. No.: (860) 667-0839
Fax No.: (860) 667-0867
Email: jsabatini@sabatinilaw.com

ATTORNEY FOR PLAINTIFF

# EXHIBIT 1



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 11/24/2025

**To:** Alexander Palmer
1692 King St
Enfield, CT 06082

Charge No: 16A-2025-00165

EEOC Representative and email:  DARLAN BASTIDAS
SUPERVISORY INVESTIGATOR
DARLAN.BASTIDAS@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Arlean Nieto
11/24/2025
Arlean Nieto
Acting District Director

Cc:

James Sabatini
One market square
Newington, CT 06111


Please retain this Notice for your records.

Enclosure with EEOC Notice of Closure and Rights (05/25)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* EEOC's official notice of dismissal**. You should **keep a record of the date you received EEOC's official notice of dismissal**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving EEOC's official notice of dismissal (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA, or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of your receipt of EEOC's official notice of dismissal and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of EEOC's official notice of dismissal, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method).  You may also submit a

Enclosure with EEOC Notice of Closure and Rights (05/25)

FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 16A-2025-00165 to the District Director at Arlean Nieto, 33 Whitehall St 5th Floor, New York, NY 10004.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 16A-2025-00165 to the District Director at Arlean Nieto, 33 Whitehall St 5th Floor, New York, NY 10004.

You may request the charge file up to 90 days after receiving EEOC's official notice of dismissal. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

# EXHIBIT 2



### STATE OF CONNECTICUT
### COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

**Alexander Palmer**
COMPLAINANT

CHRO No. 2540102

vs.

EEOC No. 16A-2025-00165

**Lincoln Technical Institute, Inc.**
RESPONDENT

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint. The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides. If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served. Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.

DATE:        SEPTEMBER 16, 2025          *Tanya A. Hughes*
                                                                          Tanya A. Hughes, Executive Director

Service:
Complainant                              palmeralexander18@gmail.com
Complainant's Attorney          jsabatini@sabatinilaw.com
Respondent's Attorney            jessica.draper@jacksonlewis.com